### In re HARGRAVES.

(District Court, S. D. Georgia, S. W. D.   December 13, 1907.)

BANKRUPTCY—EXEMPTIONS—HOMESTEAD.

Const. Ga. art. 9, § 5 (Code 1895, § 5916), provides that the debtor shall have authority to waive or renounce in writing his right to the exemption provided for in section 4 (Code 1895, § 5915) except as excepted in section 3. Section 4 (Code 1895, § 5915) declares that the General Assembly shall provide for the setting apart and valuation of the homestead exemption, but that nothing therein contained shall repeal existing laws for the exemption of property from sale contained in paragraphs 2040–2049 of the Code of 1873, it being optional with the applicant to take either, but not both, of such exemptions, and section 3 (Code, § 5914) declares that the debtor shall have power to waive or renounce in writing his right to the benefit of the exemption provided for in such article except as to wearing apparel, and not exceeding $300 worth of household and kitchen furniture and provisions, to be selected by himself and his wife. *Held*, that where all of the property of a bankrupt resident of Georgia was reduced to money, the bankruptcy court, though having no procedure for the enumeration and setting apart of the exemptions prescribed by the state law, was nevertheless a court of equity, and was authorized to direct an allowance to the bankrupt out of the proceeds of his assets of an amount in money sufficient to supply him with household and kitchen furniture and provisions so exempt.

In Bankruptcy. Petition to review ruling of referee, denying a homestead to the bankrupt, on account of waiver.

G. L. Patterson, for bankrupt.

W. W. Lambdin, for mortgage creditors.

SPEER, District Judge (orally). The determination of this case must depend upon the policy of the United States and the policy of the state of Georgia, as they each relate to the homestead and exemption laws of the state. The settled policy of Congress, as made plain by the bankruptcy law, is to preserve in substance the beneficial result to the citizen of such homestead and exemption as the state seeks to grant to and preserve for him. This will comprehend as well the state exemption and the limitations thereof in behalf of creditors. It has long been

the policy of Georgia to allow such exemptions. The first act, adopted, I believe, in 1822, for the reason that it included in its protected articles a "trooper's horse," has been popularly termed a "pony" homestead. These articles must, under the state practice, be set apart by the ordinary before it can become operative under the state laws. Another homestead was that provided for by the Constitution of 1868. This was enacted in the period of our history about which few of us can have any particular pride. The Constitution then adopted provided an absolute exemption of a large amount, $3,000, I believe, and the courts of that period held that, with regard to this, a general waiver in behalf of creditors was null and void. This became unsatisfactory to the conscientious and debt-respecting people of the state, and there was substituted therefor a homestead exemption by the Constitution of 1877. This was in the amount of $1,600, and many careful provisions were made to preserve it, so that it might be the basis of a home for the family. It is well known that this Constitution was composed by a large body, comprising many eminent statesmen and lawyers, whose knowledge of the character and necessities of our people, and whose learning in the science of jurisprudence, has scarcely been surpassed. To the people and the bar of Georgia, it would be superfluous to recite the bead-roll of illustrious names who formed that body. We all know how they loved Georgia, how well they understood the necessities of our people, and particularly, of our plain people, and at the same time how clear was their conception of the absolute importance of preserving the credit of the state, and at the same time the importance of securing to the men of moderate means for temporary use the fund with which to carry on their agricultural or other industrial pursuits. They provided, as we have seen, an exemption by no means so liberal as that which had been granted by the Constitution of 1868, but they gave to the head of the family the right to waive it. To make this operative, they gave such dignity and effect to a note or other contract, containing such waiver, that it became easy to perfect the lien against such part of the homestead as was pledged to secure the debt. This waiver, the bankruptcy courts of the United States, including the Supreme Court, have carefully protected.

The clauses of the organic law of the state, granting this homestead and authorizing the waiver, are found in article 9 of the Constitution, and particularly in section 5916 of the Code of Georgia. There are several provisions, which must be considered together in order to determine the precise question now under consideration. The section just quoted provides:

"The debtor shall have authority to waive or renounce in writing his right to the benefit of the exemption provided for in section four, except as is excepted in section three of this article."

When we turn to section 4, we find a provision in this language:

"The General Assembly shall provide by law, as early as practicable, for the setting apart and valuation of said property. But nothing in this article shall be construed to affect or repeal the existing laws for exemption of property from sale, contained in the present Code of this state in paragraphs 2040

to 2049, inclusive, and the acts amendatory thereto. It may be optional to the applicant to take either, but not both, of such exemptions."

When we further recur to section 3 of the article, referred to in section 5916 of the Code of 1895, we find the following unequivocal language:

"The debtor shall have power to waive or renounce in writing his right to the benefit of the exemption provided for in this article, except as to wearing apparel, and not exceeding three hundred dollars' worth of household and kitchen furniture, and provisions, to be selected by himself and his wife, if any," etc.

Now, the benevolent object of the clause last mentioned and of all the clauses, construed in pari materia, is very clear. It was the purpose of the state, as expressed by the convention of its people, that the man of humble means should not be stripped of all he possessed, made destitute, and penniless and hopeless, "turned out in the big road." The philosophic and broad-minded men who enacted these provisions clearly understood what calamities had resulted in the past, and might result thereafter, from harsh, severe, and irresistible measures against the debtor class. They did not mean that Georgia should be a state wherein the decay of its citizenship should keep even step with the accumulation of its wealth. They gave to the poor man, therefore, notwithstanding his own misguided conduct, notwithstanding any obligation he might make, or covenant he might sign, and to his family, the power to retain in an emergency enough to protect the family from destitution, from starvation, and from positive discomfort and degradation for want of clothing. How valuable was this provision is known to all who are familiar with the short and simple annals of the poor. How many, who, though for a time unfortunate, have in their virile and industrious manhood taken advantage of this provision to seize the opportunity for a new start in the contests of life. What increment of happiness and comfort to the people, and of wealth to the state, cannot be estimated, but that much good has resulted cannot be doubted. This provision, then, for food and clothing is not the subject of waiver. It is inexorable and organic law which preserves it as the last resource of the humble, the hungry, and the hopeless.

It is, however, said that the bankrupt did not ask for this provision, that he sought to obtain the "pony" homestead, and that he sought for a sum out of the $1,600 homestead, against both of which his waiver can be made effective. This makes little difference. We cannot in this court adopt the machinery of the state court. We have no ordinary to enumerate and set apart either of these homesteads, but a bankruptcy court of the United States is a court of equity. It can mold and frame its decrees so as to carry out in substance the beneficial purposes intended by the state law. The fact that this property was not set apart in specifics, or applied for in specifics, concerns us not at all. We have the power here to make that substantially certain, which the state officers upon proper application could have made entirely certain. Since it is competent, the court, therefore, will protect the bankrupt in his substantial right, whether he sought that right or some other. The act creating a uniform system of bankruptcy is a

great remedial statute, mainly for the benefit of the necessitous and the poor. The whole record is before us on the petition for review. This may be regarded as an investigation de novo, so far as this application for exemption is involved. We may direct the bankrupt's attorney by suitable amendment to ask for an order that we may grant to the bankrupt the exemptions as to wearing apparel, household and kitchen furniture, and provisions, authorized by the state laws, and since it seems that the whole estate has been reduced to cash in the hands of the trustee, while we cannot so far administer the state law as to require the purchase of the specific articles thus protected, we may direct that enough values in the hands of the trustee may be turned over to the bankrupt, to do with it as best he can in securing this benefit to himself and family. This is the rule with regard to all exemptions which are secured by the bankrupt act. The decree may provide that the bankrupt shall not be deprived of his wearing apparel, and that enough shall be turned over to him to supply him household and kitchen furniture, and provisions, in the amount secured by the law of the state. To that end, an order may be taken, authorizing the bankrupt to make this amendment. When this is done, the ruling of the referee, so far as that portion of the exemption is concerned, will be reversed, but it will be affirmed as to all the values in the hands of the trustee, exceeding the values of the household and kitchen furniture, and provisions, which the Constitution of the state has so carefully guarded.